IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) Case No. 2:19-CR-114<br>) Judge Graham |
| vs. | ) |
| | ) **INDICTMENT** |
| SERGIO L. VALDERRAMA-AREIZA (2)<br>   a.k.a. Blindaje<br>   a.k.a. Blindaje Artesanal<br>   a.k.a. Rasputin | ) **FILED UNDER SEAL**<br>)<br>)<br>) |
| JULIO E. JIMENEZ-OYAGA (3)<br>   a.k.a. Alcon | )<br>) |

FILED
RICHARD W. NAGEL
CLERK OF COURT

2019 APR 30 PM 1:26

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

**THE GRAND JURY CHARGES:**

## COUNT ONE

On or about and between February 2018 through and including thereafter up to and including on or about April 17, 2019, the exact dates being unknown to this Grand Jury, in Colombia, Panama, and elsewhere, the defendants,

**SERGIO L. VALDERRAMA-AREIZA a.k.a. Blindaje, a.k.a. Blindaje Artesanal, a.k.a. Rasputin, JULIO E. JIMENEZ-OYAGA, a.k.a. Alcon,**

together with others, known and unknown to the Grand Jury, did knowingly and intentionally conspire to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing, intending and having reasonable cause to believe that such substances would be unlawfully imported into the United States from a place outside thereof. The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 959(a), 960(a)(3) and 960(b)(1)(B)(ii) and 18 U.S.C § 3238.

**Manners and Means of the Conspiracy**

The defendants and their co-conspirators used the following manners and means, among others, in furtherance of the conspiracy:

1. It was part of the conspiracy that the defendants and their co-conspirators, coordinated the shipment of thousands of kilograms of cocaine from Colombia, via sea and land, through Central America and Mexico, destined to the United States, including but not limited to the following shipments seized by law enforcement officers in Panama:

    a. Approximately 176 kilograms of cocaine seized in Panama, on or about February 6, 2018;

    b. Approximately 40 kilograms of cocaine seized in Panama, on or about March 3, 2018;

    c. Approximately 22 kilograms of cocaine seized in Panama, on or about May 18, 2018;

    d. Approximately 19 kilograms of cocaine seized in Panama, on or about November 22, 2018.

2. It was further part of the conspiracy to solicit "investors" who would share the risk of individual shipments by contributing cocaine or money to a given load.

3. It was further part of the conspiracy for co-conspirators to utilize load coordinators to assist with logistics and transportation details of cocaine shipments; locate drivers and boat operators for narcotic laden vehicles and vessels; and secure shared investments from multiple co-conspirators in specific cocaine shipments.

4. It was further part of the conspiracy to pay a "tax" or "fee" to send cocaine through areas controlled by another drug trafficking organization or cartel.

5. It was further part of the conspiracy to solicit fisherman and other commercial maritime labors to transport cocaine and refueling vessels utilized to transport cocaine.

6. It was further part of the conspiracy to utilize mobile phones and other communication devices to discuss the sale, storage, distribution, manufacture, proceeds and protection of controlled substances.

7. It was further part of the conspiracy to share information on the activities and locations of law enforcement and military personnel assigned to interdict narcotics shipments.

8. It was further part of the conspiracy to share transportation costs, labor, vehicles, vessels and shipment routes to transport cocaine.

9. It was further part of the conspiracy to shelter co-conspirators who were at risk of extradition to other countries.

10. It was further part of the conspiracy to share information regarding the arrests and investigations of co-conspirators and potential partners in order to make efforts to cut ties with, and destroy evidence of connections to, these co-conspirators and potential partners.

11. It was further part of the conspiracy to use firearms to protect cocaine and proceeds from the sale of cocaine.

12. It was further part of the conspiracy to have low-level co-conspirators take responsibility for an entire load of seized cocaine in order to free higher-level co-conspirators.

13. It was further part of the conspiracy for both suppliers and customers to send emissaries to each other for the purpose of overseeing and coordinating the shipments of cocaine, testing the quality of cocaine, negotiating the price of cocaine, arranging the shipment of cash payments, and acting as a surety of good faith.

14. It was further part of the conspiracy for customers to provide a "down payment" to suppliers before a shipment was sent.

15. It was further part of the conspiracy to show "proof of loss" to investors and customers when loads were sized by law enforcement or otherwise lost through no fault of the supplier or load coordinators.

**All in violation 21 U.S.C § 963.**

## COUNT TWO

On or about and between February 2018 through and including thereafter up to and including on or about April 17, 2019, the exact dates being unknown to this Grand Jury, in Colombia, Panama, and elsewhere, the defendants,

together with others, known and unknown to the Grand Jury, did knowingly and intentionally conspire to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing, intending and having reasonable cause to believe that such substances would be unlawfully imported into the United States from a place outside thereof. The amount of cocaine involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, was at least five kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 959(a), 960(a)(3) and 960(b)(1)(B)(ii) and 18 U.S.C § 3238.

**Manners and Means of the Conspiracy**

The defendants and their co-conspirators used the following manners and means, among others, in furtherance of the conspiracy:

16. It was part of the conspiracy that the defendants and their co-conspirators, coordinated the shipment of thousands of kilograms of cocaine from Colombia, via sea and land, through Central America and Mexico, destined to the United States, including but not limited to the following shipments seized by law enforcement officers in Panama:

    a. Approximately 32 kilograms of cocaine seized in Panama, on or about August 9, 2018;

5

    b. Approximately 124 kilograms of cocaine seized in Panama, on or about September 3, 2018;

    c. Approximately 122 kilograms of cocaine seized in Panama, on or about April 17, 2019;

17. It was further part of the conspiracy to solicit "investors" who would share the risk of individual shipments by contributing cocaine or money to a given load.

18. It was further part of the conspiracy for co-conspirators to utilize load coordinators to assist with logistics and transportation details of cocaine shipments; locate drivers and boat operators for narcotic laden vehicles and vessels; and secure shared investments from multiple co-conspirators in specific cocaine shipments.

19. It was further part of the conspiracy to pay a "tax" or "fee" to send cocaine through areas controlled by another drug trafficking organization or cartel.

20. It was further part of the conspiracy to solicit fisherman and other commercial maritime labors to transport cocaine and refueling vessels utilized to transport cocaine.

21. It was further part of the conspiracy to utilize mobile phones and other communication devices to discuss the sale, storage, distribution, manufacture, proceeds and protection of controlled substances.

22. It was further part of the conspiracy to share information on the activities and locations of law enforcement and military personnel assigned to interdict narcotics shipments.

23. It was further part of the conspiracy to share transportation costs, labor, vehicles, vessels and shipment routes to transport cocaine.

24. It was further part of the conspiracy to shelter co-conspirators who were at risk of extradition to other countries.

25. It was further part of the conspiracy to share information regarding the arrests and investigations of co-conspirators and potential partners in order to make efforts to cut ties with, and destroy evidence of connections to, these co-conspirators and potential partners.

26. It was further part of the conspiracy to use firearms to protect cocaine and proceeds from the sale of cocaine.

27. It was further part of the conspiracy to have low-level co-conspirators take responsibility for an entire load of seized cocaine in order to free higher-level co-conspirators.

28. It was further part of the conspiracy for both suppliers and customers to send emissaries to each other for the purpose of overseeing and coordinating the shipments of cocaine, testing the quality of cocaine, negotiating the price of cocaine, arranging the shipment of cash payments, and acting as a surety of good faith.

29. It was further part of the conspiracy for customers to provide a "down payment" to suppliers before a shipment was sent.

30. It was further part of the conspiracy to show "proof of loss" to investors and customers when loads were sized by law enforcement or otherwise lost through no fault of the supplier or load coordinators.

**All in violation 21 U.S.C § 963.**

## FORFEITURE ALLEGATION

31. The allegations of this Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to 21 U.S.C. § 853(a)(1) and (2) and 21 U.S.C. § 970.

32. Upon conviction of the offense alleged in the Indictment, the defendants,

SERGIO L. VALDERRAMA-AREIZA a.k.a. Blindaje, a.k.a. Blindaje Artesanal, a.k.a. Rasputin, JULIO E. JIMENEZ-OYAGA, a.k.a. Alcon,

, shall forfeit to the United States, in accordance with 21 U.S.C. § 853(a)(1) and (2) and 21 U.S.C. § 970, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offenses alleged in the Indictment and/or any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violations.

**Forfeiture pursuant to 21 U.S.C. § 853(a)(1) and (2), 21 U.S.C. § 970, and Rule 32.2 of the Federal Rules of Criminal Procedure.**

A TRUE BILL

s/ Grand Jury Foreperson
FOREPERSON

**BENJAMIN C. GLASSMAN**
**UNITED STATES ATTORNEY**

s/ Jonathan J.C. Grey
JONATHAN J.C. GREY, IL-6292918
Assistant United States Attorney

8